# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHANE CLARK,<br><br>      Plaintiff,<br><br>v.<br><br>NATHAN HAYNES, CHRISTOPHER WINTERS, KYLE DEMERS, PATRICK MAHONEY, SERGEANT NATHAN WOLF, LACEE SMELCER, COLETTE HLYSTEK, JIMMY MUTCHIE, CO BRITTANY MCCUTCHEON, and JOHN DOES #1-8,<br><br>      Defendants. | Case No. 18-CV-809-JPS<br><br>**ORDER** |

  On October 18, 2018, Plaintiff filed the operative complaint in this action, alleging that his civil rights were violated when he was denied his psychotropic medications at the Wisconsin Resource Center. (Docket #20). The Court screened the complaint and allowed Plaintiff to proceed on his Eighth Amendment claim of deliberate indifference. (Docket #23). On March 12, 2019, Plaintiff filed a motion to appoint counsel. (Docket #29).[1]

  As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court

---

[1] On February 4, 2019, the Court ordered Plaintiff to identify the John Doe defendants by April 5, 2019, or they would be dismissed without further notice. (Docket #27). In light of the fact that the Court has not received anything further from Plaintiff, the John Doe defendants will be dismissed without prejudice.

should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of the plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When the Court recruits a lawyer to represent a *pro se* party, the lawyer takes the case *pro bono*. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case *pro bono* has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice here. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-fund.

The District is eternally grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Though the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her

time. Participants may seek attorney's fees when permitted by statute, such as in successful Section 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for *pro bono* appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent *pro se* plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the *pro se* appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of *pro se* prisoner litigation in this District.[2] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were Section 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of Section 1983 lawsuits has skyrocketed. About 300 Section 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, Section 1983 actions numbered 385, in 2017 it ballooned to 498, and in 2018 it grew to 549. All told, well over a third of the District's

---

[2]Although non-prisoner *pro se* litigants may also be considered for the appointment of counsel under Section 1915, the Court does not address that set of *pro se* litigants here for a few reasons. First, the volume of non-prisoner *pro se* litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of *pro bono* counsel, which they do with regularity.

new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that when the Court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are the Court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be appointed to represent Plaintiff at this stage in this case. First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a Section 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete.

This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if the Court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a *pro se* prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff has provided evidence that he made reasonable efforts to secure counsel. (Docket #30). He attached letters that he wrote to eight different civil litigators in Wisconsin and included all response letters that he received. (Docket #30-1). While not all attorneys that Plaintiff contacted practiced civil rights, *see id.* at 4, it appears that some did, *see id.* at 1–3. However, even if Plaintiff had made reasonable efforts to secure counsel, his motion falters on the second *Pruitt* step: whether the difficulty of the case exceeds his capacity to coherently present it.

This assessment must be made in light of the particular capabilities and circumstances presented by each *pro se* litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the

> case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While courts need not address every concern raised in a motion for appointment of counsel, they must address "those that bear directly" on the individual's litigation capacity. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must also incorporate the reality that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of Section 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Against this backdrop, the Court assesses Plaintiff's arguments that he cannot competently litigate this matter on his own. Plaintiff contends that the sheer number of claims and defendants in the case make it factually complex. (Docket #30 at 2). He further argues that because the claims "involve the denial of medication, it will probably be necessary to present a medical expert witness, or to cross examine medical witnesses called by the government, or both." *Id.* (citing *Jackson v. Cty. of McLean*, 953 F.2d 1070,

1073 (7th Cir. 1992)). In *Jackson*, the Court determined that an appointment of counsel was appropriate because it was "highly probable that [Plaintiff] would not have recognized the need to call expert witnesses to present a prima facie case." *Id.* At this stage in the proceedings—i.e., at the summary judgment deadline—it is clear from Plaintiff's submissions that he understands the type of evidence that is needed or that may be presented at trial. Moreover, the other two cases that Plaintiff cites in support of his arguments are distinguishable. In *Montgomery v. Pinchak*, the defendants repeatedly ignored the plaintiff's discovery requests, and the plaintiff became increasingly unable to navigate the discovery process and create a factual record in a case where a medical expert was necessary. 294 F.3d 493, 504 (3d Cir. 2002). In this case, Plaintiff has not suggested that he has been unable to compile the evidence needed to establish his case—he speculates that he may need an expert witness, but has not given any indication that he has sought one out, much less failed in seeking one out. In *Moore v. Mabus*, the Fifth Circuit determined that a potential class action involving AIDS management in a prison environment was "beyond the ability of a mere prisoner to investigate," and raised questions that would require "extensive resources" to answer. 976 F.2d 268, 272 (5th Cir. 1992). By contrast, Plaintiff's case involves straightforward factual allegations as to a single claim of deliberate indifference in violation of the Eighth Amendment. *See* (Docket #23 at 1–2). The Court has seen nothing that would suggest that Plaintiff is incompetent to carry out the litigation. The Court is mindful that this may change as the proceedings advance towards trial, and it will certainly reassess an appropriately submitted motion at a later date. However, in civil cases, unlike criminal cases, indigent litigants

are not automatically entitled to an attorney, and the Court sees no reason, at this time, to appoint one.

Plaintiff likely intuits that a lawyer would be helpful in navigating the legal system; however, Plaintiff's lack of legal training brings him in line with practically every other prisoner litigating in this Court. As a litigant in this Court, Plaintiff is under an obligation to familiarize himself with the relevant legal standards and procedural rules. The Court has assisted Plaintiff in this regard, as it does with all prisoner litigants, by providing copies of the most pertinent federal and local procedural rules along with its trial scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Additionally, Plaintiff has submitted no evidence that he suffers from cognitive, behavioral, or other limitations affecting his ability to present his arguments in a cogent fashion. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014); *Walker v. Price*, 900 F.3d 933, 940 (7th Cir. 2018) (noting that courts should consider "any available evidence" of the prisoner's literacy, communication skills, education level, litigation experience, intellectual capacity, or psychological history). His filings to date suggest that he has no such limitation. Thus, there is no reason to think Plaintiff is out of his depth at present. *James*, 889 F.3d at 327.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for appointment of counsel (Docket #29) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that John Does #1-8 be and the same are hereby **DISMISSED** without prejudice.

Dated at Milwaukee, Wisconsin, this 24th day April, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge